# Residence Requirement for Assistant United States Attorneys Under 28 U.S.C. § 545(a)

Under 28 U.S.C. § 545(a), Assistant United States Attorneys must physically reside in or within 25 miles of the district that they serve.

November 20, 2012

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

Federal law provides that "[e]ach assistant United States attorney shall reside in the district for which he or she is appointed or within 25 miles" of that district. 28 U.S.C. § 545(a) (2006). In 1979, we interpreted the phrase "shall reside" to require the "physical presence" of Assistant United States Attorneys ("AUSAs"), reasoning that the ordinary meaning of the word "residence" as well as the legislative history established Congress's intent to regulate where AUSAs could physically live while serving their districts. *Assistant U.S. Attorney—Residence Requirement (28 U.S.C. § 545)*, 3 Op. O.L.C. 360 (1979) ("1979 Opinion"). You asked us to revisit the 1979 Opinion's reading of section 545(a) in light of advances in technology that would make it possible for AUSAs to work remotely while living outside their districts.[1] Specifically, you asked whether maintaining a "virtual presence" in a district through a telework arrangement could satisfy the section 545(a) residence requirement. Although we appreciate that telework capabilities now allow some AUSAs to perform their duties even while stationed more than 25 miles from their districts, we believe that the 1979 Opinion correctly interpreted the statute and that AUSAs must physically reside in or within 25 miles of the district that they serve.[2]

---

[1] *See* Letter for Virginia A. Seitz, Assistant Attorney General, Office of Legal Counsel, from Jay Macklin, General Counsel, Executive Office for United States Attorneys (Oct. 1, 2012) ("EOUSA Letter").

[2] The 1979 Opinion interpreted an earlier version of the statute, which required all AUSAs, save those serving in the District of Columbia and the Southern District of New York, to reside within their appointing district. *See* 28 U.S.C. § 545(a) (1976). The current statute does not except AUSAs appointed for the District of Columbia and the Southern District of New York from the residence requirement, but rather allows all AUSAs, regardless of district, to live "in . . . or within 25 miles" of the district they

## I.

Section 545(a) states in its entirety:

> Each United States attorney shall reside in the district for which he is appointed, except that these officers of the District of Columbia, the Southern District of New York, and the Eastern District of New York may reside within 20 miles thereof. Each assistant United States attorney shall reside in the district for which he or she is appointed or within 25 miles thereof. The provisions of this subsection shall not apply to any United States attorney or assistant United States attorney appointed for the Northern Mariana Islands who at the same time is serving in the same capacity in another district. Pursuant to an order from the Attorney General or his designee, a United States attorney or an assistant United States attorney may be assigned dual or additional responsibilities that exempt such officer from the residency requirement in this subsection for a specific period as established by the order and subject to renewal.

The text indicates, in a number of ways, that Congress intended section 545(a) to impose a physical residence requirement. To start, the statute focuses on where AUSAs (and U.S. Attorneys) must "reside"—a word that generally connotes physically living in a particular place. *See Webster's Third New International Dictionary* 1931 (1993) (to reside is "to dwell permanently or continuously: have a settled abode for a time: have one's residence or domicile"); *Random House Dictionary of the English Language* 1648 (1987) (to reside is "to dwell permanently or for a considerable time"); *see also Black's Law Dictionary* 1423 (9th ed. 2009) (defining residence as "[t]he act or fact of living in a given place for some time"; "[t]he place where one actually lives, as distinguished from a domicile"; and "bodily presence as an inhabitant in a given place").

Beyond the use of the word "reside," the way the statute marks the bounds of the residence requirement also indicates that Congress intended to regulate physical presence. AUSAs must reside in "or within 25 miles" of the district they serve, and U.S. Attorneys for D.C. and for New York's

---

serve. 28 U.S.C. § 545(a) (2006). Despite this change, the statute's key phrase—which restricts where AUSAs "shall reside"—has remained constant, and the 1979 Opinion's analysis is therefore relevant to the amended statute.

Southern and Eastern Districts may live "within 20 miles" of their district. 28 U.S.C. § 545(a). By framing the residence requirements in terms of permissible geographic ranges, Congress indicated that it was using the phrase "shall reside" to specify where these federal attorneys must physically dwell.

Other parts of section 545(a) reinforce this understanding of the residence requirement. The statute does not apply to federal attorneys "appointed for the Northern Mariana Islands who at the same time [are] serving in the same capacity in another district." *Id.* Nor does it reach anyone to whom the Attorney General assigns "dual or additional responsibilities that exempt such officer from the residency requirement . . . for a specific period." *Id.*[3] If U.S. Attorneys and AUSAs could satisfy the requirements of section 545(a) by maintaining a virtual presence in one district while residing in another, these exceptions for those that take on dual roles in different districts would not be necessary. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (A statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks omitted)). Based on this and the other textual indications discussed above, we conclude that section 545(a) requires that AUSAs physically reside in or within 25 miles of the district they serve.[4]

---

[3] Since 2008, Congress has prohibited the use of funds "for the salary, benefits, or expenses of any United States Attorney assigned dual or additional responsibilities by the Attorney General . . . that exempt that United States Attorney from the residency requirements of 28 U.S.C. 545," effectively rendering the dual-responsibilities exception inapplicable to U.S. Attorneys. Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. B, § 215, 121 Stat. 1844, 1915 (2007); *see also* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, div. B, § 214, 125 Stat. 552, 620 (2011) (same). By preventing U.S. Attorneys from taking on dual responsibilities that would take them away from their home districts, this appropriations rider presumes that section 545(a) regulates physical presence and further reinforces our reading of the statute.

[4] We would not read the residence requirement to apply to special attorneys appointed under section 543 of title 28 of the U.S. Code, which authorizes "[t]he Attorney General [to] appoint attorneys to assist United States attorneys when the public interest so requires." Even though special attorneys "assist" U.S. Attorneys, they are not the "assistant United States attorney[s]" to whom section 545(a) refers. Rather, section 545(a)'s use of the term "assistant United States attorneys" appears to be a reference only to attorneys appointed under section 542, which provides that "[t]he Attorney General may appoint one or more *assistant United States attorneys*." (Emphasis added.) We draw support for

## II.

The legislative history confirms that section 545(a) requires physical residence. In 1896, when Congress first considered whether to authorize the appointment of AUSAs (then "assistant district attorneys"), the draft language did not include a residence requirement. Representative Johnson asked the bill sponsor whether assistants would need to be "actual residents of the district" for which they are appointed. 28 Cong. Rec. 2464 (1896). When the sponsor said no, Representative Johnson offered an ultimately successful amendment "for the purpose of imposing a restriction in that regard," commenting that he did "not think that there ought to be anybody sent out to fill such positions in the State or Territory unless he lives there." *Id.*; *see also* Act of May 28, 1896, ch. 252, 29 Stat. 140, 181 (providing that assistant district attorneys "must be residents of the district for which they are appointed").

Floor statements from the debates on subsequent amendments to the statute similarly indicate that Congress has long understood the statute to regulate physical presence. As your letter notes, EOUSA Letter at 2, the 1979 Opinion relied in part on two statements made during the 1941 debate on amending the statute, the first of which explains that the then-current version of the statute required attorneys to "move into the District and live in the District," and the second of which states that it was in "the best interest of the people whom [AUSAs] serve to require [AUSAs] to live among such people during their tenure of office." *See* 1979 Opinion, 3 Op. O.L.C. at 361; 87 Cong. Rec. 3269 (1941) (statements of Reps. McLaughlin and South). And when Congress considered another amendment in 1979, the sponsor described section 545(a) as "a codification of the policy that law enforcement officials should reside in the same community in which they enforce the law." 125 Cong. Rec. 4164 (1979) (statement of Rep. DeConcini). We have found nothing in the legislative history to suggest that Congress has ever understood the residence requirement as anything other than a limit on where U.S.

---

that reading from floor statements made by the sponsor of the original AUSA residence requirement. When asked whether the residence requirement would apply to "a special assistant," the amendment's sponsor responded that the restriction was "only for regular deputies, not the special deputies," and that the Attorney General "has a right to employ special deputies at any time." 28 Cong. Rec. 2465 (1896) (statement of Rep. Johnson).

Attorneys and AUSAs may physically live, and we do not think the technological advances that make telework an option for some AUSAs undermine the current relevance of Congress's stated purpose.

## III.

We recognize that permitting remote work arrangements like the one you describe in your letter (through which an appellate attorney sought to telework for two years while his spouse completed an overseas assignment) could assist the Department's retention efforts and alleviate potential difficulties arising from the hiring freeze.* And we are mindful that current technology could "ensure the availability" of at least some attorneys—and thereby achieve one of the important "purpose[s] of the residency requirement"—in ways that were not contemplated when Congress passed the first residence requirement in 1896, or even when we wrote the 1979 Opinion cited above. *See* 1979 Opinion, 3 Op. O.L.C. at 361. We nevertheless believe that the text and legislative history require us to adhere to the 1979 Opinion's analysis—an analysis that is consistent with other past readings of both section 545(a) and a similar residence requirement for circuit judges. *See* Memorandum for Philip H. Modlin, Director, Executive Office for United States Attorneys, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, *Residence Requirement for U.S. Attorneys* at 1 (July 11, 1974) ("Lawton Memo") (considering section 545(a) and suggesting that "it is accepted almost without question that a public employee can be required to live in the district in which he works"); Memorandum for Dennis Mullins, Deputy Assistant Attorney General, Office of Legal Policy, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Residency Requirements for Circuit Judges* at 4 (Sept. 26, 1984) (advising that a judicial nominee "establish his physical presence in California" to comply with the requirement under 28 U.S.C. § 44(c) that a circuit judge "be a resident of the circuit for which appointed"); E-mail for Kurt Didier from

---

\* Editor's Note: The Department of Justice instituted a hiring freeze from 2011 to 2014 in response to budgetary problems. *See* Dep't of Justice, Press Release, *Attorney General Holder Announces Justice Department to Lift Hiring Freeze* (Feb. 10, 2014), https://www.justice.gov/opa/pr/attorney-general-holder-announces-justice-department-lift-hiring-freeze.

Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: US Atty Residency Req't* (Aug. 2, 2002, 10:46 AM) (adhering to the 1979 Opinion's interpretation of "reside" to conclude that "presence in the district seems to meet the statutory purpose").

This is not to say that a U.S. Attorney could never approve an AUSA's request to telework away from the district in which he or she serves (and outside the 25-mile radius that the statute permits) for a reasonable period of time, subject to any requirements of the Department's Telework Policy. *See* DOJ Policy Statement 1200.01 (approved on July 20, 2012), http://www.justice.gov/jmd/hr/doj1200-01.pdf. The residence requirement, we have said, "contemplates a home in which [AUSAs] are present most of the time," not all of the time. Lawton Memo at 1. So while we do not think that an AUSA telecommuting overseas for a period of two years could fairly be considered "present most of the time" in his home district, other, short-term telework arrangements would be permissible under the statute, as long as the AUSA usually has a physical presence in or within 25 miles of the appointing district.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*